## Case No. 1,518.

### BLANCHARD v. SPRAGUE.

[3 Sumn. 535; 1 Robb, Pat. Cas. 734, 742; 2 Story, 164.][1]

Circuit Court, D. Massachusetts. May Term, 1839.

PATENTS—MONOPOLIES—VALIDITY—CONSTRUCTION —PATENT GRANTED BY CONGRESS—RETROACTIVE EFFECT—PRIOR PUBLIC USE.

1. Patents for inventions are not granted as monopolies or restrictions upon the rights of the community, but "to promote science and the useful arts," and are to be liberally construed.

[Cited in Davoll v. Brown, Case No. 3,662; Wilson v. Rousseau, 4 How. (45 U. S.) 708; Hogg v. Emerson, 6 How. (47 U. S.) 486; Smith v. Downing, Case No. 13,036; Brooks v. Fiske, 15 How. (56 U. S.) 224; Winans v. Denmead, Id. 341; Hamilton v. Ives, Case No. 5,982; Milligan & Higgins Glue Co. v. Upton, Id. 9,607; Thomas v. Shoe Machinery Manuf'g Co., Id. 13,911.]

2. The power of congress to grant to inventors is general; and it is in their discretion to say, when, and for what length of time, and under what circumstances, the patent for an invention shall be granted.

[Cited in O'Reilly v. Morse, 15 How. (56 U. S.) 118; Jordan v. Dobson, Case No. 7,519; Fire-Extinguisher Case, 21 Fed. 42.]

[1] [Reported by Hon. Charles Sumner and by William W. Story, Esq., and here compiled and reprinted by taking statement from 3 Sumn. 535, and syllabus from 2 Story, 164.]

3. Congress has power to pass an act, which operates retrospectively to give a patent for an invention already in public use; but no act will be construed to operate retrospectively, unless such a construction is unavoidable.

[Cited in Union Mill & Min. Co. v. Ferris, Case No. 14,371; Twenty Per Cent. Cases, 20 Wall. (87 U. S.) 187.]

4. In the present case, it was *held*, that the patent was for a machine, and not for a principle or function; and, therefore, was valid.

[Cited in Singer v. Walmsley, Case No. 12,900; Dederick v. Cassell, 9 Fed. 311.]

At law. Case [by Thomas Blanchard against Chandler Sprague] for violation of a patent right. An action between the same parties for an alleged violation of a patent under the act of congress of 1834, c. 213 [6 Stat. 589], was dismissed at a former term. See 3 Sumn. 279 [Blanchard v. Sprague, Case No. 1,517]. Since then a new grant of letters patent was made by act of congress of 1839, c. 14 [6 Stat. 748], under which the present action was brought. [Judgment for plaintiff.]

The plaintiff's declaration set forth the grant of letters patent to him for his invention, on the 6th of September, 1819; that these letters were cancelled, being deemed inoperative by reason of a defective specification, happening through inadvertency and mistake, without any fraudulent or deceptive intention; that new letters patent for the same invention were granted to him on the 20th of January, 1820, for the term of fourteen years; that afterwards, by an act of congress passed the 30th of June, 1834, there was granted to the plaintiff the right of making, using, and vending his invention, for the term of fourteen years from January 12, 1834, which in the said act was described as "An invention of a machine for turning or cutting irregular forms," a description of which is given in a schedule or specification, annexed to the letters patent granted to the plaintiff for the said invention, which said letters patent are in the said act by mistake stated to have been granted on the 12th of January, 1820, when in fact the letters patent last above mentioned were meant and intended to be referred to; that by an act of congress, passed 6th of February, 1839 [6 Stat. 748, c. 14], entitled "An act to amend and carry into effect an act entitled 'An act to renew the patent of Thomas Blanchard,' approved June 30th, 1834," it was enacted, that the rights secured to the plaintiff by letters patent granted on the 6th of September, 1819, and afterwards on a corrected specification on the 20th of January, 1820, be granted to the plaintiff for the further term of fourteen years from January 20th, 1834; and the declaration alleged an infringement by the defendant by using the machine within the term mentioned in the last act. These are the material parts of the declaration, which recited at length both the acts last referred to, and set forth the above facts. The facts, so far as they related to the granting of the letters patent, and the acts passed

with a view to the renewal of them. were not contested. The second letters patent were granted before the act of July 3, 1832 [4 Stat. 559, c. 162].

The plaintiff, in his specification, declared that, "as to the mechanical powers by which the movements are obtained, he claims none of them as his invention. These movements may be effected by application of various powers indifferently. Neither does he claim as his invention the cutter wheel or cutters, or friction wheel as such, nor the use of a model to guide the cutting instrument, as his invention. All these are common property, and have been so for years, but he claims as his invention the method or mode of operation in the abstract explained in the second article, whereby the infinite variety of forms, described in general terms in this article, may be turned or wrought." In another part of his specification he said: "In explaining and describing the different modes, in which he contemplates the application of the principle or character of his said machine, or invention, he does this in compliance with the requirements of the law, and not by way of extending his claim for discovery or invention. His invention is described and explained in the second article of this specification, to which reference is hereby made for information of that, which constitutes the principle or character of his machine or invention, and distinguishes it, as he verily believes, from all other machines, discoveries or inventions, known or used before." In the second article, to which he refers, the plaintiff explained the principle and character of his machine, and the mode of constructing it to effect the different objects to be accomplished, and the mode of operation. This was done at considerable length.

The parties agreed to submit the matters of fact in dispute to a master instead of a jury, who was to report the facts and his opinion thereupon to the court, in order that his report might be accepted or rejected, as might be deemed right upon a revision of the evidence to be reported, and that the court might decide upon the whole case for the plaintiff or the defendant; and if the decision should be for the plaintiff, damages were to be assessed according to an agreement between the parties. After the examination of a great number of witnesses, most of whom were practical engineers or machinists, occupying the greater part of eighteen days, and hearing the counsel on both sides, upon the various questions raised, the master reported the facts, and the testimony and proofs, from which he drew his conclusions. And upon the first question, whether the plaintiff's specification was couched in terms so full, clear, and exact as to distinguish it from all other inventions, and to enable any machinist, reasonably and competently skilled in the business, to construct the machine, in all its forms, from the directions there given and other drawings annexed, the master re-

ported his opinion in the affirmative. Upon the second question, whether there was a mode, clearly described in the specification, of constructing a machine capable of producing, from one model or pattern, different sizes, preserving the proportions as stated in the specification, he reported that a mode was described of effecting it sufficiently near for all practical purposes. Upon the third question, whether the machine patented and claimed, or any material part thereof, was known or used before the invention thereof by the plaintiff, and particularly, whether it was so known to one Woolworth, he reported in the negative. Upon the fourth question, whether the rights secured as alleged in the declaration had been infringed by the defendant, he reported in the affirmative, and assessed damages at $521.27.

Upon the hearing before the court upon the whole case, it was contended by the counsel for the defendant, that the plaintiff's specification was defective, that he claimed the functions of the machine, and not the machine itself, and that the description of the machine, so far as it related to the making of things of different sizes from the same model, as well as to the designation of what was intended to be claimed,' was unintelligible and wholly insufficient. It was also contended, that the last act for renewing the letters patent was inoperative, inasmuch as it granted only the rights secured by the patents of September 6, 1819, and January 20th, 1820, both of which were supposed to be void; and that the act was also retrospective, so far as it regarded those who had used the machine between the time of the expiration of the letters patent, and the renewal of them by the last-mentioned act.

B. Rand and Mr. Fiske, for plaintiff.
Willard Phillips and Mr. Parsons, for defendant.

STORY, Circuit Justice. My opinion is, that the master has drawn the true conclusions from the facts, which are stated in his report; and I have not the slightest hesitation in adopting them as the basis of my own opinion. The objections, which have been taken at the argument to the present patent granted to the plaintiff by the act of congress of 6th day of February, 1839, c. 14 [6 Stat. 748], I shall now proceed to dispose of, in as few words as may be practicable. In the first place, as to the point, whether the plaintiff has sufficiently expressed in his specification the true nature, character and extent of the invention, which he claims. I am of opinion that he has.

Formerly, in England, courts of law were disposed to indulge in a very close and strict construction of the specifications, accompanying patents, and expressing the nature and extent of the invention. This construction seems to have been adopted upon the notion, that patent rights were in the nature

of monopolies, and, therefore, were to be narrowly watched, and construed with a rigid adherence to their terms, as being in derogation of the general rights of the community. At present a far more liberal and expanded view of the subject is taken. Patents for inventions are now treated as a just reward to ingenious men, and as highly beneficial to the public, not only by holding out suitable encouragements to genius and talents and enterprise; but as ultimately securing to the whole community great advantages from the free communication of secrets, and processes, and machinery, which may be most important to all the great interests of society, to agriculture, to commerce and to manufactures, as well as to the cause of science and art.

In America this liberal view of the subject has always been taken; and, indeed, it is a natural, if not a necessary result, from the very language and intent of the power given to congress by the constitution [1 Stat. 14] on this subject. "Congress (says the constitution) shall have power to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right of their respective writings and discoveries." Patents, then, are clearly entitled to a liberal construction, since they are not granted as restrictions upon the rights of the community, but are granted "to promote science and useful arts."

Looking at the present specification, and construing all its terms together, I am clearly of opinion, that it is not a patent claimed for a function, but it is claimed for the machine specially described in the specification; that is, not for a mere function, but for a function as embodied in a particular machine, whose mode of operation and general structure are pointed out. In the close of his specification the patentee explicitly states, that his "invention is described and explained in the second article of his specification, to which reference is made for information of that which constitutes the principle or character of his machine or invention, and distinguishes it, as he verily believes, from all other machines, discoveries, or inventions, known or used before." Now, when we turn to the second article, we find there described, not a mere function, but a machine of a particular structure, whose modes of operation are pointed out, to accomplish a particular purpose, function. or end. This seems to me sufficiently expressive to define and ascertain what his invention is. It is a particular machine, constituted in the way pointed out, for the accomplishment of a particular end or object. The patent is for a machine, and not for a principle or function detached from machinery.

Then it is objected, that the description of the mode of constructing the machine is so defective, that it is not practicable for persons skilled in the art or science to which it belongs or relates, to construct the machine.

This objection is put an end to by the master's report, and the facts there stated by intelligent witnesses.

Then, it is suggested, that the grant of the patent by the act of congress of 1839, c. 14 [6 Stat. 748], is not constitutional; for it operates retrospectively to give a patent for an invention, which, though made by the patentee, was in public use and enjoyed by the community at the time of the passage of the act. But this objection is fairly put at rest by the decision of the supreme court in the case of the patent of Oliver Evans. Evans v. Eaton, 3 Wheat. [16 U. S.] 454.[2] For myself, I never have entertained any doubt of the constitutional authority of congress to make such a grant. The power is general, to grant to inventors; and it rests in the sound discretion of congress to say, when and for what length of time and under what circumstances the patent for an invention shall be granted. There is no restriction, which limits the power of congress to enact, where the invention has not been known or used by the public. All that is required is, that the patentee should be the inventor.[2]

The only remaining objection is, that the act is unconstitutional, because it makes the use of a machine constructed and used between the time of the passage of the act of 1834, c. 213 [6 Stat. 589], and the grant of the patent under the act of 1839, c. 14, unlawful, although it has been formerly decided, that under act of 1834 the plaintiff had no valid patent; and so the defendant, if he constructed and used the machine during that period, did lawful acts, and cannot now be retrospectively made a wrong-doer. If this were the true result of the language of the act it might require a good deal of consideration. But I do not understand, that the act gives the patentee any damages for the construction or use of the machine, except after the grant of the patent under the act of 1839, c. 14. If the language of the act were ambiguous, the court would give it this construction, so that it might not be deemed to create torts retrospectively, or to make men liable for damages for acts, lawful at the time when they were done. The act of congress passed in general terms ought to be so construed, if it may, as to be deemed a just exercise of constitutional authority. And not only so; but it ought to be construed not to operate retrospectively, or ex post facto, unless that construction is unavoidable; for even if a retrospective act is, or may be constitutional, I think I may say, that according to the theory of our jurisprudence, that interpretation is never adopted without absolute necessity; and courts of justice always lean to a more benign construction. But, in the present case, there is no claim for any damages, but such as have accrued to the patentee from a use of his

[2] See. also, Evans v. Eaton, 7 Wheat. [20 U. S.] 356; Evans v. Hettich, 7 Wheat. [20 U. S.] 453.

machine since the grant of the patent under the act of 1839, c. 14.

I am, therefore, of opinion that there ought to be judgment for the plaintiff for the damages, agreed by the parties. Judgment accordingly.

[NOTE. For other cases involving this patent, see note at end of Blanchard v. Reeves, Case No. 1,515, and note at end of Blanchard's Gun-Stock Turning Factory v. Warner, Id. 1,521.]